**INTERNATIONAL TRANSQUIP INDUSTRIES, INC.,**
Appellant,

v.

**BROWNING/FERRIS INDUSTRIES, INC. and Paul Lamza,**
Appellees.

No. 06–99–00106–CV.

Court of Appeals of Texas, Texarkana.

Submitted July 12, 2000.

Decided May 15, 2001.

**38**

Timothy M. McDaniel, McDaniel & Allen, PC, Houston, for appellant.

Cliff Harrison, Mark H. Ritchie, Harrison, Bettis & Staff, LLP, Patricia J. Kerrigan, Werner & Kerrigan, LLP, Houston, for appellees.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

International Transquip Industries, Inc. (ITI) sued Browning Ferris Industries, Inc. (BFI) and Paul Lamza for tortious interference with a contract. The jury found in favor of BFI and Lamza. ITI appeals from the judgment.

On appeal, ITI contends that the trial court committed reversible error by excluding certain evidence because the exclusion was reasonably calculated to and probably did result in an improper verdict.

BFI is in the business of hauling garbage. Some of their fleet consisted of right-hand drive trucks, some (if not all) of which were equipped with a "flip switch," which is a type of service brake system. Some drivers used the flip switch to keep the vehicle from moving while they exited it. This practice was dangerous, which BFI recognized, and BFI embarked on a program to retrofit the vehicles with a safer system. BFI decided to test a retrofit of its trucks with an ITI air-applied mechanically-held brake system, which was called the "Air–Max System." Paul Lamza, BFI's manager of warranty and special projects, was put in charge of the retrofit program.

At some point, ITI entered into negotiations with Rockwell International regarding Rockwell's potential purchase of ITI's assets and the right to license "Safe–T–Max," the next generation of braking system technology that ITI was developing based on the Air–Max System. On January 26, 1995, Rockwell made a preliminary offer to ITI to purchase ITI's assets and inventory for $1.2 million. On July 27, 1995, Rockwell faxed ITI a draft contract. It was clearly stamped "draft" on every page and was not signed by either party.

BFI had encountered problems during the retrofit program. First, there had been a few "roll-aways," where trucks had been parked for the night and the braking mechanism lost air pressure, resulting in brake failure. Second, Lamza testified that he had also become concerned about ITI's willingness and ability to provide technical support for its braking systems. Various BFI entities nationwide were having problems getting replacement parts for the ITI brake systems.

On August 2, 1995, Lamza called ITI requesting that an ITI representative meet at BFI's headquarters with BFI risk managers. Lamza testified that when he

contacted ITI per risk management's instructions, he did not know why risk management was requesting the meeting. What happened next is hotly disputed. Frank Haasbeek, president of ITI, attended as the ITI corporate representative. Haasbeek testified that when he arrived at BFI's headquarters, but before he had reached the designated room, Lamza stopped him. Lamza allegedly told Haasbeek that there had been a roll-away in Auburn, Massachusetts, and demanded that Haasbeek accept responsibility for the accident. When Haasbeek allegedly declined to accept responsibility for the accident until he had time to investigate, Lamza allegedly again demanded that Haasbeek accept responsibility, adding that if Haasbeek did not, then Lamza would talk to Rockwell. Lamza denies that this conversation took place.

As part of Rockwell's evaluation of the market for the Safe–T–Max system, Prakash Jain, an engineer with Rockwell, contacted Lamza because he knew that BFI had been testing an ITI braking system. Lamza testified that before returning Jain's call, he contacted Cindy Osborn, a risk management attorney with BFI. When Lamza returned the call to Jain, Osborn was in his office and monitored the call. Telephone records show this call took place on August 28, 1995.

Rockwell decided not to go through with its purchase of ITI and withdrew its offer on September 18, 1995. In a letter to ITI, Rockwell stated that it had reviewed the marketplace for ITI's braking systems and determined that there was "confusion in the minds of potential customers...."

ITI filed suit against BFI and Lamza, alleging that BFI and Lamza had tortiously interfered with ITI's prospective contract with Rockwell. ITI sought actual damages of $2 million, as well as exemplary damages. The jury found in favor of BFI and Lamza.

At trial ITI offered evidence, outside the presence of the jury, about a fatal accident that had occurred in Atlanta, Georgia. In ITI's offer of proof, Haasbeek testified that there had been a fatal accident in Atlanta, Georgia, that was very similar to the accident in Auburn, Massachusetts. ITI alleged that in both the Atlanta and Auburn accidents, the Air–Max System had been installed, but the flip switches had also been left in. Because Lamza was in charge of BFI's retrofit program nationwide, it was his responsibility to ensure that the flip switches were removed.

ITI contends the excluded evidence tended to prove that Lamza acted maliciously. ITI's theory is that Lamza must have already been in trouble for the Atlanta fatality when the Auburn accident occurred. ITI contends that Lamza, knowing he was in trouble, desperately needed ITI to take responsibility for the Auburn accident so that Lamza himself would not be held responsible. ITI contends that evidence of the Atlanta accident proves Lamza's motive in speaking to Rockwell was revenge or retaliation after ITI refused to help him.[1]

■ To obtain a reversal of a verdict on the basis that evidence was wrongfully excluded, the appellant must show that 1) the trial court committed error, and 2) the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Tex .R.App.P. 44.1(a)(1); *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989); *Dalworth Trucking Co. v. Bulen,* 924 S.W.2d

---

1. Lamza was laid off or fired shortly thereafter. He testified, however, that it was not due to the accidents. BFI was bought out and other people were laid off during the same time frame.

728, 736 (Tex.App.—Texarkana 1996, no writ). BFI and Lamza made a pretrial motion to exclude the evidence in question on the basis of irrelevancy. When the matter was brought forward at trial, the trial court did not state the reason for excluding the evidence, but it is clear from the context of the proceeding that it was excluded on the basis of the pretrial motion which challenged the relevance of the evidence and its possible prejudice outweighing any probative value. Tex.R.Evid. 403.

Although ITI, in its brief, went straight to the harm caused by the exclusion of the evidence, its argument of harmful effect encompasses the argument of relevance, endeavoring to show that the court erred in excluding the evidence on the basis of irrelevance.

■■■ The decision whether to admit evidence lies within the sound discretion of the trial court. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex.1995); *Morton Int'l v. Gillespie*, 39 S.W.3d 651, 655 (Tex.App.—Texarkana 2001, no pet. h .). We do not disturb the trial court's exercise of discretion absent a showing of clear abuse. The test for abuse of discretion is whether the trial court acted without reference to guiding rules or principles. *Robinson*, 923 S.W.2d at 558; *Gillespie*, 39 S.W.3d at 655.

To be admissible under the Texas Rules of Evidence, evidence must be relevant to the issues in the case. Tex.R.Evid. 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R.Evid. 401. Here, ITI contends evidence of the Atlanta accident tends to make it more probable that Lamza acted with malice when speaking with Rockwell, because ITI refused to help

him divert responsibility for the accident away from himself.

Texas Rule of Evidence 104(b) recognizes the relevance of evidence may be dependent on proof of predicate facts that provide the logical connection between the proffered evidence and the proposition for which the evidence is offered. Evidence of the Auburn accident introduced at trial included proof that the accident was caused by a failed braking system. Such evidence included proof the braking system was either engaged when the truck rolled away or was automatically engaged as an emergency response, but nonetheless failed to stop the truck.

Evidence was admitted concerning the Atlanta accident. However, the trial court excluded evidence of the details of the accident. The excluded evidence tended to prove only that a fatality accident took place in Atlanta and that the truck involved in the accident was equipped with both a flip switch and the ITI braking system. The excluded evidence contains no proof that a failed braking system caused the Atlanta accident. Indeed, an inference could be drawn from the excluded evidence that the accident was caused by driver error. There is no sufficient predicate on which the trial court could base a determination that the excluded evidence was relevant to show that Lamza had been blamed for the Atlanta accident or that Lamza believed or had reason to believe that he was being blamed for the Atlanta accident. This tendered evidence sought to show the gruesome details of a fatality, which was not shown to have relevance to the present case. While it is true that two police reports of the incident contained substantially dissimilar witness accounts, neither suggested that brake failure caused the accident. Nevertheless, at least some of the evidence would have been admissible if it had been shown that

Lamza's state of mind had been affected by the accident to the extent that he believed he was being blamed for the accident or believed he caused the accident. But there is no evidence from which a reasonable inference could be drawn that the Atlanta accident had some bearing on Lamza's state of mind. Because the proper predicate was not laid to show the relevance of this accident and because gruesome photographs contained in the offer outweighed any possible probative value, we find that the trial court did not abuse its discretion in excluding this evidence.

The judgment of the trial court is affirmed.